# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**MARK SAWICKI**, an individual

    *Plaintiff*,

v.

**RESOLUTE INDUSTRIAL, LLC**, a Delaware limited liability company,

    *Defendant.*

Case No.
Hon.

---

Miller Canfield Paddock & Stone PLC
Jeffrey A. Crapko (P78487)
150 W Jefferson Ave, Ste 2500
Detroit, MI 48226-4415
T: (248) 267-3237
F: (248) 879-2001
crapko@millercanfield.com
*Attorneys for Plaintiff Mark Sawicki*

---

## VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Mark Sawicki files his Complaint for Declaratory Judgment against Defendant Resolute Industrial, LLC, for the following reasons:

## NATURE OF THE DISPUTE

1. This diversity suit involves the contested enforceability of the employment agreement (the "**Agreement**") attached hereto as **Exhibit 1**, including whether the Agreement was validly assigned and whether the Agreement's non-

competition provision (Para. 20) is enforceable pursuant to Michigan law, including MCL 445.774a.

## PARTIES, JURISDICTION, AND VENUE

2. Plaintiff Mark Sawicki ("**Sawicki**") resides in Berkley, Michigan, and is a citizen of the State of Michigan.

3. Defendant Resolute Industrial, LLC ("**Resolute**") is a Delaware limited liability company with its principal place of business in Wheeling, Illinois, and is a citizen of the State of Illinois and the State of Delaware.

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1332: Diversity of citizenship exists between Sawicki and Defendant, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

5. This Court is authorized to award the requested declaratory relief pursuant to 28 U.S.C. §§ 2201, 2202 and Federal Rule of Civil Procedure 57.

6. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this District.

## GENERAL ALLEGATIONS

7. On April 6, 2006, Sawicki became employed with Mobile Air, Inc. ("**Mobile Air**") as a sales representative selling portable cooling, humidification, heating, air filtration, and environmental controls to commercial and industrial customers (the "Industry").

8. In connection with Sawicki's employment with Mobile Air, Sawicki executed the Agreement on April 26, 2006.

9. Section 20 of the Agreement provides as follows:

**Covenant of Noncompetition**

[Sawicki] agrees that for a period of this Agreement and for two (2) years thereafter, it will not directly or indirectly represent, be employed by, sell for, or otherwise be associated with any other entity engaged in the then business of [Mobile Air] nor will [Sawicki] be employed by or consult for any then past or then present Customer of [Mobile Air's] for any service or product offered by [Mobile Air]. [Sawicki] also agrees that [Sawicki] and any individual or entity under [Sawicki's] direct or indirect control will not solicit, hire or retain as an employee or independent contractor any employee or former employee of [Mobile Air] without the prior written consent of the President of [Mobile Air]. Furthermore, [Sawicki] will not interfere, cause [or] assist others to interfere with any contractual or business relationship between the [Mobile Air] and any business or person or otherwise, in any way, directly or indirectly, interfere with the [Mobile Air's] business.

**Exhibit 1** at 15, § 21.5.

10. Section 21.5 of the Agreement provides as follows:

**Successors and Assigns**. This Agreement shall be binding and inure to the benefit of the parties' respective heirs, personal representatives, successors and assigns; provided, however, that neither this Agreement nor any interest herein shall be assigned by the [Sawicki] without the prior written consent of the President of [Mobile Air], **nor by [Mobile Air] without giving not less than ten (10) days prior written notice to [Sawicki].**

**Exhibit 1** at 16, § 21.5 (emphasis supplied).

3

11. Upon information and belief, in 2015, Mangrove Equity Partners, LLC ("**Mangrove**"), through its subsidiary Tioga Air Heaters LLC ("**Tioga**"), purchased substantially all of the assets of Mobile Air.

12. Mobile Air failed to provide prior written notice to Sawicki that Mobile Air intended to assign the Agreement.

13. Mobile Air never provided any written notice to Sawicki that Mobile Air assigned the Agreement.

14. Upon information and belief, Mobile Air did not assign the Agreement to Mangrove or Tioga.

15. Concurrent with Mangrove/Tioga's purchase of Mobile Air's assets, Tioga employed Sawicki.

16. Upon information and belief, in 2017, One Equity Partners LLC ("**One Equity**") purchased substantially all Mobile Air's former assets from Mangrove/Tioga through One Equity's subsidiary, Resolute Industrial, LLC.

17. Mangrove and Tioga failed to provide prior written notice to Sawicki that Mangrove and Tioga intended to assign the Agreement.

18. Mangrove and Tioga never provided any written notice to Sawicki that either Mangrove or Tioga had assigned the Agreement.

19. Upon information and belief, Mangrove and Tioga did not assign the Agreement to One Equity or Resolute.

20. Concurrent with One Equity/Resolute's purchase of Mobile Air's former assets from Mangrove/Tioga, One Equity/Resolute employed Sawicki and changed the name of the subsidiary company back to Mobile Air.

21. Upon information and belief, in 2019, A&E Industrial Partners purchased substantially all of Mobile Air's assets from One Equity, including Resolute.

22. After A&E Industrial Partners' purchase of Mobile Air's former assets, Resolute employed Sawicki.

23. Upon information and belief, Mobile Air did not assign the Agreement to Resolute.

24. Upon information and belief, neither Mangrove nor Tioga assigned the Agreement to Resolute.

25. Upon information and belief, One Equity did not assign the Agreement to Resolute.

26. One Equity never provided any written notice to Sawicki that One Equity assigned the Agreement.

27. Upon information and belief, Mobile Air never assigned the Agreement to anyone or any entity.

28. Upon information and belief, Resolute was not assigned the Agreement.

29. Upon information and belief, Resolute possesses no written assignment of the Agreement.

30. While employed with Resolute, Resolute repeatedly requested that Sawicki execute contracts containing non-competition covenants and other obligations in favor of Resolute.

31. While employed with Resolute, Sawicki never executed a single contract with Resolute.

32. On or about March 4, 2022, Sawicki gave notice to Resolute that Sawicki intended to resign from Resolute.

33. On or about March 4, 2022, Sawicki gave notice to Resolute that Sawicki intended to continue working within the Industry applying his general skills and knowledge.

34. Based on Sawicki's longstanding employment in the Industry, Sawicki has accumulated over two decades of general skills and knowledge in the Industry.

35. Sawicki desires to continue to use his general skills and knowledge in the Industry.

36. On March 9, 2022, Resolute, through its counsel, emailed Sawicki the letter attached hereto as **Exhibit 2** (the "**March 9 Letter**").

37. In the March 9 Letter, Resolute's counsel asserted that Sawicki remained bound by the Agreement.

38. In the March 9 Letter, Resolute's counsel threatened to enforce the Agreement against Sawicki, including the non-competition provision set forth in Section 20 thereof.

39. The March 9 Letter asserts that "Section 20 of the Agreement [] prohibits you from competing with Resolute…" **Exhibit 2**.

40. Sawicki's last day of employment with Resolute was March 11, 2022.

41. As part of Sawicki's departure from Resolute, Sawicki dutifully returned to Resolute all Resolute documents and property.

42. Sawicki retains no Resolute documents or property.

43. In each year that Sawicki was employed with Mobile Air, Mangrove, Tioga, One Equity, and Resolute, Sawicki earned in excess of $100,000.00 in salary and commissions.

44. Prohibiting Sawicki from exercising his right to apply his general skills and knowledge in the Industry damages Sawicki in excess of $75,000.00.

## COUNT I
## REQUEST FOR DECLARATORY JUDGMENT - ASSIGNMENT

45. Sawicki restates the preceding allegations as if fully restated herein.

46. Resolute takes the position that Sawicki received at least ten days' prior notice that Mobile Air was assigning the Agreement.

47. In reality, Sawicki did not receive at least ten days' prior notice that Mobile Air was assigning the Agreement.

7

48. Resolute takes the position that Sawicki received at least ten days' prior notice that Mangrove and/or Tioga was assigning the Agreement.

49. In reality, Sawicki did not receive at least ten days' prior notice that Mangrove and/or Tioga was assigning the Agreement.

50. Resolute takes the position that Sawicki received at least ten days' prior notice that One Equity and/or Resolute was assigning the Agreement.

51. In reality, Sawicki did not receive at least ten days' prior notice that One Equity and/or Resolute was assigning the Agreement.

52. Resolute takes the position that the Agreement was validly assigned to Resolute.

53. In reality, the Agreement was not validly assigned to Resolute.

54. Resolute takes the position that it has standing and the legal ability to enforce the Agreement, including Section 20 thereof.

55. In reality, Resolute does not have standing or any other legal ability to enforce the Agreement, including Section 20 thereof because no valid assignment occurred per the plain terms of the Agreement.

56. Sawicki's claims are adverse to those of Resolute in connection with the Agreement.

57. A declaratory judgment is necessary to guide Sawicki's future conduct and employment, specifically in connection with the Agreement, and to determine the parties' legal relations and respective rights under the Agreement.

58. Accordingly, an actual, substantial, and justifiable controversy exists between Sawicki and Resolute.

## COUNT II
## REQUEST FOR DECLARATORY JUDGMENT – NON-COMPETITION

59. Sawicki restates the preceding allegations as if fully restated herein.

60. Resolute takes the position that Section 20 protects Resolute's reasonable competitive interest, in compliance with MCL 445.774a(1).

61. But Section 20 does not protect a reasonable competitive interest of Resolute, in violation of MCL 445.774a(1).

62. Resolute takes the position that Section 20 of the Agreement is reasonable as to geographic area.

63. But Section 20 is not reasonable as to geographic area, in violation of MCL 445.774a(1), because, among other things, Section 20 is unlimited as to geographic area and constitutes a global ban on competition.

64. Resolute takes the position that Section 20 of the Agreement is reasonable as to type of employment or line of business, in compliance with MCL 445.774a(1).

65. But Section 20 is not reasonable as to type of employment or line of business, in violation of MCL 445.774a(1), because, among other things, Section 20 does not specify the employment or line of business, extends beyond the services performed by Sawicki, is broader than necessary to protect any legitimate business interest, and prevents Sawicki from using his general skills and knowledge in the Industry.

66. Resolute takes the position that Section 20 of the Agreement is reasonable as to duration, in compliance with MCL 445.774a(1).

67. But Section 20 is not reasonable as to duration, in violation of MCL 445.774a(1), because Section 20 imposes a two-year duration.

68. Resolute takes the position that Section 20 is reasonable, valid, and enforceable.

69. But Section 20 of the Agreement is unreasonable, invalid, and unenforceable, including, without limitation, because Section 20 is unreasonable as to geographic area, duration, type of employment or line of business, because Section 20 prohibits Sawicki from using his general skills and knowledge within the Industry, and for the reasons set forth above.

70. Sawicki's claims are adverse to those of Resolute in connection with the Agreement.

71. A declaratory judgment is necessary to guide Sawicki's future conduct and employment, specifically in connection with the Agreement, and to determine the parties' legal relations and respective rights under the Agreement.

72. Accordingly, an actual, substantial, and justifiable controversy exists between Sawicki and Resolute.

## REQUESTED RELIEF

**ACCORDINGLY,** Plaintiff Mark Sawicki respectfully requests that this Court enter a declaratory judgment in favor of Plaintiff and against Defendant Resolute Industrial, LLC, to the following effect:

A. Declaring that the Agreement attached hereto as **Exhibit 1** was not validly assigned to Resolute Industrial, LLC;

B. Declaring that Resolute Industrial, LLC has no standing or legal ability to enforce the Agreement attached hereto as **Exhibit 1**, including Section 20 thereof; and

C. Declaring that Section 20 of the Agreement attached hereto as **Exhibit 1** is legally unenforceable.

Respectfully submitted,

s/Jeffrey A. Crapko
Miller Canfield Paddock & Stone PLC
Jeffrey Alan Crapko (P78487)
150 W Jefferson Ave, Ste. 2500
Detroit, MI 48226-4415
crapko@millercanfield.com
*Attorneys for Plaintiff Mark Sawicki*

Dated: March 25, 2022

## VERIFICATION OF PLAINTIFF MARK SAWICKI

I, Mark Sawicki, have reviewed the Verified Complaint, and the factual allegations set forth therein are true and accurate based on my personal knowledge and involvement to the best of my knowledge.

Dated: 3/25/22

Mark Sawicki
Plaintiff